# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CHAVARRIA,<br><br>        Plaintiff,<br><br>v.<br><br>MANAGEMENT & TRAINING CORPORATION, a corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 3:16-cv-00617-H-RBB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 32] |

On December 10, 2015, Plaintiff Jesse Chavarria ("Plaintiff") filed an action in the California Imperial County Superior Court against Defendant Management & Training Corporation ("Defendant"). (Doc. No. 1-2 at 3.) Plaintiff alleges Defendant improperly terminated him after he sustained a work-related injury in violation of various state laws, including the California Fair Employment and Housing Act ("FEHA") and the California Family Rights Act ("CFRA"). (Id.) On March 10, 2016, Defendant removed the case to the Federal Court for the Southern District of California and filed an answer. (Doc. Nos. 1, 2.) On April 24, 2017, Defendant filed a motion for summary judgment on Plaintiff's claims. (Doc. No. 32.) On April 26, 2017, the parties filed a joint motion to continue the hearing. (Doc. No. 33.) The same day, the Court granted the motion and continued the hearing to May 30, 2017. (Doc. No. 34.) On May 16, 2017, Plaintiff filed a response in

opposition to Defendant's motion for summary judgment. (Doc. No. 36.) On May 22, 2017, the parties filed a second joint motion to continue the hearing. (Doc. No. 37.) The Court granted the motion on May 23, 2017 and reset the hearing for June 5, 2017. (Doc. No. 38.) The parties filed their reply briefs on May 26, 2017. (Doc. Nos. 39, 40.) The Court held a hearing on the motion on June 5, 2017. Attorneys Geniene B. Stillwell and Freda Tjoarman appeared on behalf of Plaintiff. Attorney Serafin H. Tagarao appeared on behalf of Defendant.

## BACKGROUND

Defendant Management & Training Corporation ("MTC") operates the Imperial Regional Detention Center (the "Detention Center"), which houses U.S. Immigration & Customs Enforcement detainees. (Doc. No. 36-3, Chavarria Decl. ¶ 5.) Plaintiff began working at the Detention Center as a detention officer in the fall of 2014. (Id. ¶ 6.)

Prior to his employment at the Detention Center, Plaintiff worked as a detention officer and lieutenant at another detention facility in El Centro (the "El Centro Facility") from 2009 to 2014. (Id. ¶ 2.) While at the El Centro Facility, Plaintiff suffered an injury to his left arm and shoulder while restraining a detainee. (Id. ¶ 3.)

In early 2015, Plaintiff contends he still had pain in his left arm and shoulder and was diagnosed with a muscle tear. (Id. ¶ 8.) Plaintiff subsequently took a leave of absence until September 15, 2015. (Id.) During this time, Plaintiff provided MTC with a medical report by Dr. McSweeney, which diagnosed Plaintiff with a partial tear of the left pectoralis major. (Doc. No. 36-3, Chavarria Decl. Ex. B at 2.) As a result of the injury, Dr. McSweeney opined that Plaintiff was "unable to return to his usual and customary occupation" and was "precluded from repetitive forceful or heavy pushing or pulling with the left upper extremity." (Id. at 4.)

After reviewing Dr. McSweeney's report, MTC terminated Plaintiff. On October 7, 2015, MTC's Human Resources Manager Brandi Haley ("Haley"), called Plaintiff to inform him of the decision. (Doc. No. 32-5, Haley Decl. ¶ 8.) Haley followed up the phone conversation with a letter stating "Your request to extend your leave of absence

indefinitely has been denied. . . . Based on medical information received from your physician you are no longer able to perform the essential functions of your position with or without an accommodation. We are treating your failure to return to work as a voluntary resignation, effective as of the date of this letter." (Doc. No. 36-3 at 18.)

On October 13, 2015, Plaintiff replied to Haley's letter, stating "Your letter indicates that I requested an extension of indefinite leave of absence which is not accurate. . . . Furthermore, your letter states that you received information from physician (sic), stating that I'm no longer able to perform my essential job functions with or without accommodations. Nowhere does it state that I am unable to perform my essential job functions with or without accommodation." (Id. at 21.)

In response, Haley sent a letter to Plaintiff on October 28, 2015, which stated: "Upon receipt of your physician's correspondence, we reviewed all vacancies at the facility to determine whether you could be moved into an alternative position. There were no positions for which you were qualified, that you could perform with or without reasonable accommodation. As such, we considered you to have voluntary (sic) resigned your position so that you would be eligible for rehire should you choose to apply for an open position in the future and can provide a physician's release authorizing your return to work." (Id. at 23.)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when a moving party shows there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is no genuine dispute if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of producing evidence showing they are entitled to summary judgment. Celotex Corp., 477 U.S. at 330. The moving party can

3

3:16-cv-00617-H-RBB

satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. <u>Id.</u> at 323. If the moving party satisfies their initial burden, then the burden shifts to the nonmoving party to introduce evidence showing there is a genuine dispute of material fact. <u>Id.</u> at 331. A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To satisfy its burden, the non-moving party "may not rest upon mere allegations or denials of his pleadings." <u>Id.</u> Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." <u>Id.</u> Facts and inferences are to be viewed in the light most favorable to the non-moving party. <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## II. **ANALYSIS**

### A. **DISABILITY DISCRIMINATION CLAIM**

Defendant moves for summary judgment, arguing Plaintiff cannot establish a prima facie case because his injury prevented him from performing the essential duties of a detention officer. (Doc. No. 32-2 at 17.) In opposition, Plaintiff argues that triable issues of material fact remain as to whether he was able to perform those duties.

To establish a prima facie case of disability discrimination under the FEHA, Plaintiff must show "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and (3) he was subjected to adverse employment action because of his disability." <u>Faust v. California Portland Cement Co.</u>, 150 Cal.App.4th 864, 886 (2007). At summary judgment, Defendant can satisfy its initial burden under <u>Celotex</u> by "present[ing] admissible evidence either that one or more of the plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors." <u>Sandell v. Taylor-Listug, Inc.</u>, 188 Cal.App.4th 297, 309 (2010). The burden then shifts to Plaintiff to show there are material issues of triable fact. <u>Id.</u>, <u>see also</u> <u>Celotex</u>, 477 U.S. at 330.

4

To establish he was "otherwise qualified to do his job," Plaintiff must show he could perform the essential duties of his job, with or without reasonable accommodations. Cal. Gov't Code § 12940 (a)(1); accord Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 n.1 (9th Cir. 2015) ("Nigro established that with reasonable accommodations . . . he was able to perform the essential functions of his position. He was, therefore 'otherwise qualified' to do his job."). The FEHA defines "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds . . . . [and] does not include the marginal functions of the position." Cal. Gov't Code § 12926(f). A duty can be essential because (1) "the reason the position exists is to perform that function," (2) there is a "limited number of employees available among whom the performance of that job function can be distributed," or (3) "[t]he function [is] highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." Cal. Gov't Code § 12926(f)(1)(A)-(C).

Defendant argues that Plaintiff cannot establish that he was qualified to do his job because the evidence shows Plaintiff was unable to restrain and secure assaultive detainees because of his disability, one of the essential functions listed in the Position Description of a Detention Officer. (Doc. No. 36-4 at 203.) In support of this conclusion, Defendant relies primarily on the medical report of Dr. McSweeney. (Doc. No. 32-3 at 108-12.) In particular, Defendant notes that Dr. McSweeney stated Plaintiff was "permanent and stationary," "precluded from repetitive forceful or heavy pushing or pulling with the left upper extremity," and could not "return to his usual and customary occupation." (Id. at 110-11.)

Plaintiff argues in response that Dr. McSweeney's report is inapposite because it was rendered in connection with a separate workers' compensation proceeding and, in any event, does not support the conclusion that Plaintiff could not perform his essential functions. The specific limitation mentioned by Dr. McSweeney was that Plaintiff could not engage in "repetitive forceful or heavy pushing or pulling." (Doc. No. 32-3 at 111.) And Plaintiff argues there is no evidence in the record that restraining a detainee would

require repetitive forceful action or heavy pushing or pulling. (Doc. No. 36 at 21.) Furthermore, Plaintiff contends that he is still physically capable of restraining a detainee, as evidenced by the fact he successfully did so after he had sustained the injury to his arm. (Doc. No. 36-3, Chavarria Decl. ¶14.) Finally, Plaintiff argues he is able to perform the essential functions of his job as he successfully passed his use of force test in September 2014, (Doc. No. 36-4 at 215-16), and satisfactorily performed his duties as a detention officer for at least six months prior to being terminated despite the injury to his arm, (Doc. No. 36-4 at 178).

Viewing these facts in the light most favorable to Plaintiff, material disputes of fact remain as to whether Plaintiff could perform the essential functions of his job as a detention officer. See Liberty Lobby, Inc., 477 U.S. at 265 ("Credibility determinations, the weight of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Thus, the Court denies Defendant's motion for summary judgment as to Plaintiff's disability discrimination claim.

Defendant separately argues that Plaintiff's disability discrimination claims fails as a matter of law under California Government Code § 12940 because employing Plaintiff would threaten the health or safety of Plaintiff or other MTC employees. (Doc. No. 32-2 at 21.) In support of this argument, Defendant relies on Furtado v. State Personnel Bd., 212 Cal.App.4th 729 (2013), where a California court affirmed a lower court's conclusion that a correctional officer who was "unable to disarm, subdue, or apply restraints to an inmate would be a hazard to others." Id. at 748. This case, however, is distinguishable, both procedurally and factually. First, in Furtado, the California Court of Appeal was reviewing a trial court's denial of a writ of mandate, not a motion for summary judgment. The California State Personnel Board ("SPB") had decided to demote a correctional officer after determining he was unable to perform the essential functions of his previous position. Id. at 733. Because the trial court was reviewing the SPB decision, it only needed to find substantial evidence supporting their conclusion. Id. at 743. In contrast, when reviewing a motion for summary judgment, the Court must

view the facts in the light most favorable to the non-moving party.  Second, Furtado is factually distinguishable because there the plaintiff repeatedly failed his fitness-for-duty examination on account of his impairment and the SPB found he was unable to subdue an inmate.  Id. at 756.  In contrast here, there remain material questions of fact as to what functions Plaintiff can or cannot perform—including whether he can use force to restrain a detainee.

## B. **FAILURE TO ACCOMMODATE CLAIM**

Under the FEHA, it is an unlawful employment practice to fail to provide a disabled employee with reasonable accommodations that enable the employee to perform the essential functions of their job.  Cal. Gov't Code § 12940(m).  To establish a prima facie case of failure to accommodate under the FEHA, Plaintiff must show "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability."  Lui, 211 Cal.App.4th at 971.

Based on the present record, the Court agrees with Plaintiff that triable issues of fact remain as to whether Plaintiff could perform the essential functions of his job.  As a result, the Court denies Defendant's motion for summary judgment on the failure to accommodate claim on the grounds that Plaintiff cannot satisfy that element.

Additionally, Defendant argues that summary judgment is proper because Defendant attempted to reasonably accommodate Plaintiff's disability.  In opposition, Plaintiff argues that reasonable accommodations were available but not offered.

Whether an employer's actions were reasonable is inherently factual and "the employer cannot prevail on summary judgment . . . unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the

employee failed to engage in discussions in good faith." King v. United Parcel Service, Inc., 152 Cal.App.4th 426, 442-43 (2007) (quoting Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 256 (2000)). Defendant has not presented any evidence that it offered Plaintiff any accommodations, nor that Plaintiff failed to engage in good faith discussions. As such, the Court assesses whether Plaintiff was qualified to perform any vacant position within the organization.

At the time Plaintiff was terminated, there were at least two vacant positions at the El Centro Facility: Laundry Worker – Detainee Lead and Cook II – Detainee Lead. (Doc. No. 32-2 at 24.) Defendant argues Plaintiff could not perform the essential functions of these roles because they required constant lifting and moving objects and also required supervising detainees.

Plaintiff argues in opposition that he was capable of performing the essential functions of either open position. (Doc. No. 36 at 24.) Dr. McSweeney did not say that Plaintiff could not lift objects, only that he could not engage in "repetitive forceful or heavy pushing or pulling." (Doc. No. 32-3 at 108-12.) And in his deposition, Warden Rathman testified that the only pulling motion that was required of a cook was opening the cooler doors but did not know how heavy the doors were or whether Plaintiff could open them. (Doc. No. 36-4 at 184-85.) Furthermore, Plaintiff asserts in his declaration that based on his observations of both the Laundry Worker and Cook position he would be able to perform their essential duties. (Doc. No. 36-3, Chavarria Decl. ¶15.)

On this record, Defendant has not established that the undisputed facts show there were no vacant positions Plaintiff could perform. King, 152 Cal.App.4th at 373-74. As such, Defendant is not entitled to summary judgment of this claim.

### C. **INTERACTIVE PROCESS CLAIM**

California Government Code § 12940(n) makes it unlawful for "an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant." Cal. Gov't Code § 12940(n);

8

see also Nadaf-Rahrov v. Neiman Marcus Group, Inc., 166 Cal.App.4th 952, 980 (2008). "The interactive process is designed to bring [employer and employee] together to speak freely and to determine whether a reasonable, mutually satisfactory accommodation is possible." Gelfo v. Lockheed Martin Corp., 140 Cal.App.4th 34, 61 (2006) (quoting Jensen, 85 Cal.App.4th at 261-62). An employer is liable under § 12940(n) when they bear the responsibility for a breakdown in that interactive process. Nadaf-Rahron, 166 Cal.App.4th at 985.

Defendant moves for summary judgment on the interactive process claim, arguing that Plaintiff never requested a reasonable accommodation and, in any event, Defendant engaged in good faith dialog with Plaintiff. (Doc. No. 32-2 at 27-28.) Plaintiff opposes, arguing questions of fact remain as to whether Defendant's behavior was reasonable. (Doc. No. 36 at 29.)

      1. Plaintiff's Request

Generally, an employer's duty to engage in the interactive process is not triggered until the employee makes a request. See Cal. Gov't Code § 12940(n) ("in response to a request"); Robinson v. HD Supply, Inc., 2012 WL 5386293, *7 (E.D. Cal. Nov. 1, 2012); Scotch v. Art Institute of California-Orange County, Inc., 173 Cal.App.4th 986, 1013 (2009) ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest reasonable accommodations."). However, "no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation." Gelfo, 140 Cal.App.4th at 62, n.22.

Defendant's Human Resource Manager, Haley, recalled Plaintiff asking her to "help him out." (Doc. No. 36-4 at 110.) And Haley testified that she understood this to mean that Plaintiff was asking for accommodations:

    Q: So I guess going back to my original question, when Mr. Chavarria
       presented his release to return to work with those permanent restrictions, did

>you view him at that point as requesting reasonable accommodation of his restrictions?
>
>A: Yes.

(Id. at 64.) As such, a reasonable juror could conclude that Defendant was aware of the need to consider accommodations for Plaintiff and the duty to engage in the interactive process was triggered.

### 2. Good Faith Interactive Process

During the interactive process, "[e]ach party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party." Gelfo, 140 Cal.App.4th at 62 n.22. Defendant claims it engaged in the good faith interactive process by exploring all available vacant positions and remaining in contact with Plaintiff. (Doc. No. 32-2 at 29.) Plaintiff offers contrary facts that raise a triable issue of material fact regarding whether Defendant complied with its obligation to participate in good faith in the interactive process.

Plaintiff points out that Defendant did not comply with its own internal policies in dealing with Plaintiff. Haley testified in her deposition that Defendant's policy was to have an in-person meeting between herself, Warden Rathman, and the person requesting a leave or accommodation that was denied. (Doc. No. 36-4 at 66.) Haley, however, admitted this meeting never happened in Plaintiff's case. (Id.) Similarly, Defendant's internal policy titled "Persons with Disabilities" states that "upon the applicant or employee's request for reasonable accommodation, the human resources manager must prepare the request for reasonable accommodation form." (Doc. No. 36-4 at 201.) Haley, however, admitted she did not fill out a Reasonable Accommodation Form for Plaintiff. (Doc. No. 36-4 at 65.) And the parties dispute whether there were vacant positions open that would accommodate Plaintiff's disability. (Doc. No. 36-4 at 8.)

Finally, "[w]hether a specific accommodation was 'reasonable' and whether an employer engaged in a good faith interactive process with a disabled employee are

traditional questions of fact." Ludovico v. Kaiser Permanente, 57 F.Supp.3d 1176, 1201 (N.D. Cal. 2014). This case is no different. Given the disputed issues of material fact, the Court denies summary judgment on this claim.

### D. PUBLIC POLICY CLAIM

Defendant argues Plaintiff's wrongful termination in violation of public policy claim fails for the same reason as his FEHA claim of disability discrimination. (Doc. No. 32-2 at 23, n.4.) But triable issues of material fact remain as to whether Defendant violated the FEHA's prohibition on disability discrimination. As a result, a triable issue as to the one precludes summary judgment as to the other. See City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1161 (1998) ("We conclude that disability discrimination can form the basis of a common law wrongful discharge claim."); c.f., Faust v. California Portland Cement Co., 150 Cal.App.4th 864, 886 ("Because Faust has viable claims for violation of the CFRA, it necessarily follows that a triable issue exists with respect to the fourth cause of action for wrongful termination in violation of public policy.").

### E. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Defendant moves for summary judgment on Plaintiff's claim of intentional infliction of emotion distress ("IIED"), arguing that claim is barred by workers' compensation and Defendant neither engaged in outrageous conduct nor acted with intent to cause extreme or severe distress. Plaintiff opposes, arguing that the claim is not barred by workers' compensation and there are triable issues of fact.

To establish a prima facie case of IIED, Plaintiff must show that Defendant engaged in (1) extreme and outrageous conduct, (2) with the intent to cause, or reckless disregard of the probability of causing, emotional distress, and (3) Defendant's conduct was the actual and proximate cause of Plaintiff's severe or extreme emotional distress. Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009). Conduct is extreme and outrageous when it "exceed[s] all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal.4th at 1050. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or

11

3:16-cv-00617-H-RBB

other trivialities" are not enough. Id. at 1051. However, [t]here is no bright line standard for judging outrageous conduct, and a case-by-case appraisal of conduct is required. Corkill v. Preferred Employers Group, LLC, 2011 WL 5975678, *14 (S.D. Cal. Nov. 28, 2011) (citing Cochran v. Cochran, 65 Cal.App.4th 488, 494 (1998)).

Plaintiff contends that material questions of fact remain as to whether Defendant's conduct was extreme and outrageous and whether Defendant had the requisite intent. (E.g., Doc. No. 36-2 at 16-17.) Plaintiff has offered facts to show that Defendant failed to follow its own affirmative action and disability accommodation policy. (Doc. No. 36-4 at 66, 201.) Finally, Plaintiff has offered facts tending to show that Defendant failed to reasonably engaged in the interactive process or explore reasonable accommodations. (E.g., Doc. No. 36-3 at 18-23.)

Courts have found that "discriminatory acts can constitute outrageous conduct." Boehler, 2015 WL 12743688, *3. However, merely establishing facts that support a violation under the FEHA is not enough to meet the extreme and outrageous standard. Corkill, 2011 WL 5975678, *15 ("Therefore, a claim of discrimination under the FEHA is not sufficient by itself to sustain a claim for intentional infliction of emotional distress.") Viewing the facts in the light most favorable to Plaintiff, material issues of fact remain.

Similarly, material issues of triable fact remain as to Defendant's intent. Plaintiff must show that Defendant engaged in "conduct intended to inflict injury or engaged in with the realization that injury will result." Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993). Viewed in the light most favorable to Plaintiff, Plaintiff has offered evidence that Defendant failed to follow its own policies when dismissing him (e.g., Doc. No. 36-4 at 66), mischaracterized his request for accommodations as a request for indefinite leave (id. at 109-11), and determined that reasonable accommodations were unavailable without fully exploring the available options, (compare Doc. No. 36-4 at 171 with id. at 18), At this stage, these facts are sufficient to raise a triable issue of intent.

12

3:16-cv-00617-H-RBB

Defendant also argues that Plaintiff's IIED claim fails because it is barred by workers' compensation. Workers' compensation generally provides the exclusive remedy for employees injured as a result of their employment. Livitsanos v. Superior Court, 2 Cal.4th 744, 754 (1992); Yau v. Santa Margarita Ford, Inc., 229 Cal.App.4th 144, 161 (2014) ("Physical and emotional injuries sustained in the course of employment are preempted by the workers' compensation scheme"); Cal. Lab. Code § 3602 ("the right to recover compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer"). As an exception to this general rule, relief is not barred where "the employer's conduct . . . exceeds the risks inherent in the employment relationship." Livitsanos, 2 Cal.4th at 754.

In Miklosy v. Regents of Univ. of Cal., 44 Cal.4th 876 (2008), the California Supreme Court revisited the exceptions to workers' compensation and held that a claim for IIED in a whistleblower retaliation case was barred because it did not exceed the risks inherent in an employment relationship. Id. at 902-03 (quoting Shoemaker v. Myers, 52 Cal.3d 1, 23 (1990) ("Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions."); see also Yau, 229 Cal.App.4th at 161 (rejecting an IIED claim in a whistleblower wrongful termination case). Post-*Miklosy*, no California appellate court has addressed whether IIED claims arising from disability discrimination are barred. See Negherbon v. Wells Fargo Bank, 2015 WL 6163570, *10 (N.D. Cal. Oct. 21, 2015) ("The parties do not cite—and this Court is not aware of—any post-*Miklosy* California appellate cases addressing the issue of whether an allegation of IIED arising from illegal discrimination and harassment is barred by *Miklosy*.")

The parties offer no federal court case law on whether IIED claims, based on disability discrimination, are barred by the workers' compensation exclusive remedy. As to other forms of discrimination, federal district courts have found that some forms of discrimination exceed the risks inherent in employment. E.g., Elowson v. Jea Senior

13

3:16-cv-00617-H-RBB

Living, 2015 WL 2455695, * 5 (E.D. Cal. May 22, 2015); Negherbon, 2015 WL 6163570, *10. However, these cases dealt with different forms of discrimination than that alleged here. See Elowson, 2015 WL 2455695, *5 ("discrimination based on race, religion, age, or gender is not a normal risk inherent in employment"); Rascon v. Diversified Maintenance Systems, 2014 WL 1572554, *9 (E.D. Cal. April 17, 2014) ("Gender or race based harassment and discrimination are actions that exceed the risks inherent in the employment relationship."); Webber v. Nike USA, Inc., 2012 WL 4845549, *5 (S.D. Cal. Oct. 9, 2012) (age discrimination); see also City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1155 (1998) ("Therefore, a section 132a violation, like sexual and racial discrimination, falls outside the compensation bargain."). Determining whether Defendant's conduct falls outside of risks inherent in the employment relationship would benefit from additional factual development. As such, the Court denies without prejudice Defendant's motion for summary judgment on Plaintiff's IIED claim.

### F. PUNITIVE DAMAGES

In California, punitive damages are available under Civil Code § 3294 where a defendant is "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Such conduct must be proven by clear and convincing evidence. Punitive damages can be awarded for violations of the FEHA and for intentional infliction of emotional distress. Myers v. Trendwest Resorts, Inc., 148 Cal.App.4th 1403, 1435-36 (2007); McInteer v. Ashley Distribution Services, Ltd., 40 F.Supp.3d 1269, 1295 (C.D. Cal. 2014). But not every violation of the FEHA is sufficient and the Court expects further development of the record on whether Plaintiff's intentional infliction of emotional distress claim is barred by the workers' compensation exclusive remedy. E.g., Achal v. Gate Gourmet, Inc., 114 F.Supp.3d 781, 798, 815 (N.D. Cal. 2015) (allowing FEHA claim but dismissing punitive damages).

Viewing the facts in the light most favorable to Plaintiff, triable issues of fact remain on claims that theoretically could support a punitive damages prayer for relief.

See Cloud v. Casey, 76 Cal.App.4th 895, 912 (1999) ("The jury could properly conclude that the corporations intentionally discriminated . . . then attempted to hide the illegal reason for their decision with a false explanation, and that in this, they acted in a manner that was base, contemptible or vile."). As such, the Court denies Defendant's motion for summary judgment as to the punitive damages prayer for relief.

### G. CFRA CLAIMS

Plaintiff has voluntarily dismissed his claims based on the CFRA. (Doc. No. 36 at 7.) As a result, the Court denies Defendant's motion for summary judgment on these claims as moot.

### CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment on all remaining claims.

**IT IS SO ORDERED.**

DATED: June 5, 2016

_____
Hon. Marilyn L. Huff
United States District Judge